RICHARD K. BERNARD,
GENERAL COUNSEL,
METRO-NORTH COMMUTER RAILROAD
Carol Sue Barnett (CB-5225)
347 Madison Avenue
New York, New York 10017
(212) 340-3149

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROBERT BARBANTI,

                Plaintiff,                              04 Civ. 4939 (SCR) (MDF)

                -against-                              <u>NOTICE OF REMOVAL</u>

METRO-NORTH COMMUTER RAILROAD,

                Defendant.
-----------------------------------------------------------x

        Defendant Metro-North Commuter Railroad ("Metro-North") states:

        1.       Pursuant to 28 U.S.C. §§ 1441, <u>et seq</u>., Metro-North hereby removes this action to this Court from the Supreme Court of the State of New York, County of Orange, in which it is now pending under the name and style of Robert Barbanti, plaintiff, against Metro-North Commuter Railroad, Index No. 2004/3172.

        2.       This Notice of Removal is timely. Metro-North received the Summons and Complaint by hand delivery on May 25, 2004. (A copy of Summons and Complaint is attached as Ex. A.) In accordance with 28 U.S.C. § 1446(b), Metro-North is filing this Notice of Removal within 30 days after its initial receipt of the Complaint. Should this court determine that this action was not removable or that Metro-North improperly removed it, Metro-North will pay all costs and disbursements incurred by reason of this removal.

3. Venue in this district is proper because Orange County is within this district.

4. This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337. As we explain below, this action arises under and is preempted by the Railway Labor Act, 45 U.S.C. §§ 151, et seq. ("RLA"). Under 28 U.S.C. § 1441(a)-(b), defendant is entitled to remove this action from the Supreme Court of the State of New York, County of Orange, to this Court.

5. In the complaint, plaintiff Robert Barbanti alleges that "on and prior to April 1, 2003, Metro-North induced, caused and procured [him] to give up his seniority and leave his employment as an Electronic Specialist with Norfolk based upon representations by Metro-North to [him] that [he] would become employed in a protected position as a Signal Inspector on the Port Jervis Territory, effective April 1, 2003." He alleges that his new position at Metro-North "was to be protected from 'being bumped' by other Metro-North employees in the C & S Department for a period of time equal to his years of service at Norfolk." Plaintiff alleges that he "left his employment with Norfolk in reliance upon the representations." (Complaint, ¶¶ 7, 8, 10, Ex. A.)

6. Plaintiff further alleges that pursuant to an agreement dated April 15, 2003 between Metro-North and the Association of Commuter Rail Employees ("ACRE") Local 166, plaintiff was switched from his Signal Inspector position to an Electronic Technician position without his consent. (Complaint, ¶¶ 11-12, Ex. A.)

7. Based on these facts, plaintiff asserts three causes of action, including what appear to be claims of fraudulent misrepresentation and breach of contract.

(Complaint, ¶¶ 15-31, Ex. A.) Metro-North answered the complaint. (A copy of the Verified Answer is attached as Exhibit B.)

8.  In or around March 2003, Metro-North assumed operation of the Port Jervis railway line pursuant to a lease agreement with Norfolk Southern, and in connection therewith, Metro-North planned for the creation of new positions on the Port Jervis line. It was determined that the Norfolk Southern employees who were then working in the Port Jervis Territory were to be given priority consideration for employment for these positions. (A copy of the relevant portion of the operations and sublease agreements is attached as Ex. C.)

9.  Metro-North negotiated the rates of pay, rules and working conditions for these new positions with the Association of Commuter Rail Employees ("ACRE") Local 166, the representative of Metro-North signal workers. In or around April 2003, Metro-North formally recognized ACRE Local 166 as the bargaining representative of the new employees and new positions for the Port Jervis Line, and agreed to extend the terms of the ACRE collective bargaining agreement ("CBA") to the new positions. (A copy of the Letter Agreement dated April 15, 2003 is attached as Exhibit. D.)

10. In or around April 2003, Metro-North offered plaintiff one of these new Port Jervis positions, Signal Inspector, represented by ACRE Local 166. Shortly thereafter, in connection with the final terms of the agreement between ACRE Local 166 and Metro-North concerning the new positions, plaintiff was switched into another new Port Jervis position, Electronic Technician, because that position was more suited to his Norfolk Southern experience (Ex. D).

11. Metro-North is a carrier subject to the RLA. See Long Island R.R. Co. v. Intern. Ass'n of Machinists, 874 F.2d 901 (2d Cir. 1989), cert. denied, 493 U.S. 1042 (1990). The rates of pay, rules and working conditions of Metro-North's signal workers are governed by its collective bargaining agreement with ACRE, which was negotiated and settled pursuant to the RLA.

12. The CBA specifically governs plaintiff's situation. Rule 2 of the CBA governs the process for selection of positions, and Rule 3 governs seniority rights among the ACRE members. (A copy of pertinent provisions of the CBA is attached as Ex. E.) In addition, the seniority rights specific to the former Norfolk Southern employees were covered by the Letter Agreement between ACRE Local 166 and Metro-North, dated April 15, 2003, which memorialized prior discussions between the union and Metro-North (Ex. D). Among other things, the letter agreement provides for plaintiff's placement upon hire (¶ 6), plaintiff's rights of priority to the position he was hired to fill (¶ 1), plaintiff's rate of compensation (¶ 2), and the procedure for filling newly-established positions in the Port Jervis territory not filled by former Port Jervis employees (¶ 3).

13. Moreover, Rule 4-K-1 of the CBA mandates that all grievances or claims other than those involving discipline must be presented to the signal supervisor within forty-five calendar days from the date of the occurrence on which the grievance is based. Plaintiff did not avail himself of the mandatory dispute resolution procedure provided in Rule 4-K-1 of the CBA.

13. Plaintiff's claims arising out of the alleged promise of position of employment and details thereof at Metro-North are a "minor dispute," which, because

they either arise out of or are inextricably intertwined with the CBA governing his employment, are preempted by the RLA.

15. Congress intentionally designed the RLA to prevent labor problems -- both those concerning disputes surrounding bargaining and those concerning grievances arising from the interpretation of existing agreements -- from interrupting the nation's rail and air transportation. "In passing the RLA, Congress intended to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." Mack v. Metro-North Commuter R.R. Co., 876 F. Supp. 490, 492 (S.D.N.Y. 1994), citing Atchison, Topeka & Santa Fe R.R. Co. v. Buell, 480 U.S. 557, 562 (1987); 45 U.S.C. § 151a. Toward this end, "the RLA established a mandatory arbitral mechanism for the 'prompt and orderly settlement' of two classes of disputes." Mack, 876 F. Supp. at 492 (citation omitted).

15. The first class, those concerning "rates of pay, rules or working conditions," 45 U.S.C. § 151a(4), are known in the industry as "major" disputes. "Major" disputes relate to "'the formation of collective bargaining agreements or efforts to secure them.'" Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 302-04 (1989) ("Conrail"), quoting Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945). The second class, known in the industry as "minor" disputes, involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact pattern." Brotherhood of R.R. Trainmen v. Chicago River & Indiana R.R. Co., 353 U.S. 30, 33 (1957); Burley, 325 U.S. at 723.

16. Once it becomes apparent that a dispute is a "minor" one about the meaning of an existing collective bargaining agreement, no court, federal or state, has

jurisdiction to determine the dispute. That determination is solely within the jurisdiction of an adjustment board sanctioned by the RLA. 45 U.S.C. § 153. See Conrail, 491 U.S. at 303-04.

17. Where an employee purports to sue his employer under an "independent" body of law, the RLA's grievance-to-adjustment board procedure preempts the claim and the dispute is classified as "minor" if it arises over rights and obligations "rooted firmly in the collective bargaining agreement" so that "'any attempt to assess liability . . . inevitably will involve [labor] contract interpretation.'" Hawaiian Airlines Inc. v. Norris, 512 U.S. 246, 260 (1994), quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 218 (1985). Although the industry jargon under the RLA and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, is somewhat different, the RLA standard for preemption is the same as that for Section 301. Hawaiian Airlines, 512 U.S. at 260-61. Under either Act, federal law preempts a state law claim that is "'inextricably intertwined with consideration of the terms of [a] labor contract.'" See, e.g., Wall v. Construction & General Laborers' Union, 224 F.3d 168, 178 (2d Cir. 2000) (Section 301 preempts state claims for wrongful termination and tortious interference with employment, quoting Lueck, 471 U.S. at 213); Ninger v. El Al Israel Airlines, Inc., 166 LRRM (BNA) 2703 (S.D.N.Y. 2000) (RLA preempts claim that, despite express language of the CBA, airline had practice of paying severance to employees who resigned; applying the "inextricably intertwined" test of Lueck).

18. In this case, plaintiff's state law claims clearly present "minor disputes." Even if there was an alleged promise, it was not a promise separate and apart from the CBA, and plaintiff so understood that, as his complaint makes clear (Ex. A, e.g., ¶¶ 7,

6

10-13, 29). As noted, the CBA explicitly provides a grievance procedure to resolve disputes such as this one. But, instead of utilizing that procedure, plaintiff filed an action in state court. An employee may not "elect his remedies" and avoid the exclusive jurisdiction of the adjustment board by suing for damages under state law. Andrews v. Louisville & N. R.R., 406 U.S. 320, 323-34 (1972).

19. Removal of this case is proper as "any independent agreement of employment could only be effective as part of the collective bargaining agreement." Olguin v. Inspiration Consolidated Copper Co., 740 F.2d 1468, 1474 (9th Cir. 1984). (To protect the efficiency of the collective bargaining scheme, an individual contract that conflicts with a CBA must be superceded by that CBA. J.I. Case Co. v. NLRB, 321 U.S. 332, 337-39 (1944)). While plaintiff couches his claim in terms of fraud, his seniority and the other terms and conditions of his employment are controlled by the CBA and thus, resolution of his claim requires interpretation of the CBA. Kollar v. United Transp. Union, 83 F.3d 124, 125 (5th Cir. 1996) (affirming removal to federal court on virtually identical facts); Allen v. United Transp. Union, 964 F.2d 818, 821-22 (8th Cir. 1992). This action is preempted by the RLA, 45 U.S.C. §§ 151, et seq., because resolution of Plaintiff's claims necessarily requires interpretation of the CBA. Ninger, supra, 166 LRRM (BNA) 2703; see also Andrews, 406 U.S. at 321.

20. Metro-North will promptly serve written notice of the filing of this Notice of Removal with the Clerk of the New York Supreme Court, County of New York, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Metro-North prays that the action against it in the Supreme Court of the State of New York in and for the County of Orange be removed therefrom to this Court.

Dated: New York, New York
June 23, 2004

Respectfully Submitted,

Richard K. Bernard,
Vice President and General Counsel,
Metro-North Commuter Railroad

By:_____/S_____
    Carol Sue Barnett (CB-5225)

347 Madison Avenue
New York, NY 10017
(212) 340-3149