# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
-------------------------------------------------------------X

ROBERT BARBANTI,

                Plaintiff,

    - against -

MTA METRO NORTH COMMUTER
RAILROAD,

                Defendant.

-------------------------------------------------------------X

*Index No.* **2004 3172**
*Plaintiff(s) designates* ,
ORANGE
*County as the place of trial*

ORIGINAL FILED

2004 MAY 11 A 11: 42
ORANGE COUNTY CLERK FILED

**SUMMONS**

**TO THE ABOVE NAMED DEFENDANT(S):**

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED:    Walden, New York
           May 6, 2004

                Yours, etc.,

                MARK T. STARKMAN, ESQ.
                JACOBOWITZ AND GUBITS, LLP
                Attorneys for Plaintiff
                158 Orange Avenue, P.O. Box 367
                Walden, New York 12586
                (845) 778-2121

TO:    MTA METRO NORTH COMMUTER
        RAILROAD
        347 Madison Avenue
        New York, New York 10017

ACCEPTED ON BEHALF OF
METRO-NORTH

MAY 2 5 2004

W:\6393\1\RMC4238.WPD

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
-------------------------------------------------------------x
ROBERT BARBANTI,

                                    Plaintiff,                          VERIFIED COMPLAINT

        -against-                                                       Index No.

MTA METRO NORTH COMMUTER
RAILROAD,                                                              2004 3172

                                    Defendant.
-------------------------------------------------------------x

## PLAINTIFF DEMANDS TRIAL BY JURY

1.      Plaintiff, Robert Barbanti, by his attorneys, Jacobowitz & Gubits, LLP,

complains of the Defendant, MTA Metro-North Commuter Railroad, alleges:

### STATEMENT OF FACTS

2.      At all times relevant, Plaintiff Robert Barbanti has resided at 21 Truman

Court, Wallkill, New York, 12589.

3.      Defendant, MTA Metro-North Commuter Railroad (hereinafter "Metro-

North") is a public benefit corporation created pursuant to the Public Authorities Law

of the State of New York and is one of the wholly owned commuter railroad

subsidiaries of the Metropolitan Transportation Authority.

4.      That at all times relevant, Defendant Metro North maintained its

executive offices at 347 Madison Avenue, New York, New York, 10017.

5.      That in or about March 2003, Metro North negotiated a long term lease

with the Norfolk Southern Railroad (hereinafter "Norfolk") in which Metro North

assumed full responsibility for the maintenance of the right-of-way of a line of trackage

known as the Port Jervis Line.

6.      That pursuant to the aforementioned lease agreement between Metro-

North and Norfolk, Metro North agreed to give preference in hiring to the employees of

Norfolk who were then working in the Port Jervis Territory for positions that Metro-

North planned on establishing within Metro North's own C & S Department.

7.     That on and prior to April 1, 2003, Metro North induced, caused and procured the Plaintiff to give up his seniority and leave his employment as an Electronic Specialist with Norfolk based upon representations by Metro North to Plaintiff that Plaintiff would become employed in a protected supervisory position as a Signal Inspector at Metro North and would work on the leased Port Jervis Territory, effective April 1, 2003 with a base pay rate of $29.15 per hour, plus overtime.

8.     That Plaintiff left his employment with Norfolk in reliance upon the representations made by Metro North.

9.     When Plaintiff accepted Metro North's offer of employment as a Signal Inspector, he expected to have the supervisory duties of a Signal Inspector with all the rights and compensation attendant to that position.

10.     That Plaintiff's new position on Metro North as a Signal Inspector was to be protected from "being bumped" by other Metro North employees in the C & S Department for a period of time equal to his years of service at Norfolk.

11.     That by letter agreement dated April 15, 2003 (hereinafter the "Letter Agreement") from Metro-North Labor Relations Director, Raymond Burney, which was co-signed on April 17, 2003 by Thomas Ryder as General Chairman of the Association of Commuter Rail Employees ("ACRE") Local 166, Metro North entered into an agreement with ACRE Local 166 as the duly accredited representative of the former employees of Norfolk, including Plaintiff, who currently worked in the Port Jervis Territory and who were hired by Metro North for positions being established within the C & S Department of Metro North for maintenance of the Port Jervis Territory.

12.     That pursuant to the Letter Agreement, it was agreed by Metro North and ACRE Local 166 that Plaintiff would be forced out of his protected position as a Signal Inspector and placed in an Electronic Technician position and that the Signal Inspector's

position would be posted for bid by other Metro North employees with seniority in the C & S Department of Metro North.

13. That Plaintiff was switched from his Signal Inspector position to an Electronic Technician position pursuant to the Letter Agreement without his consent.

14. That a Notice of Claim was served upon Metro North on May 27, 2003 and that over thirty (30) days have elapsed since the Plaintiff served the Notice of Claim upon the Defendant and Defendant has neglected or refused to make an adjustment or payment of Plaintiff's claims.

## AS AND FOR A FIRST CAUSE OF ACTION

15. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "14" of this Complaint with the same force and effect as if fully set forth at length herein.

16. That Defendant fraudulently represented to Plaintiff that he was being hired to work for Metro North in a protected, supervisory Signal Inspector position in the Port Jervis Territory before Defendant reached an agreement with ACRE Local 166 regarding the new positions in Metro North's C & S Department in the Port Jervis Territory.

17. That Defendant fraudulently induced Plaintiff to leave his employment with Norfolk because Defendant needed employees with knowledge of the C & S system on the Port Jervis Territory when Metro North assumed responsibility for maintenance of the Port Jervis line.

18. That when Defendant induced Plaintiff to leave his employment with Norfolk to become a Signal Inspector at Metro North, Defendant either knew that Plaintiff was going to be forced out of his protected Signal Inspector's position at Metro North after he commenced employment with Defendant, or Defendant lacked sufficient knowledge of the ultimate terms of the agreement to be reached with ACRE Local 166

to be able to represent to Plaintiff that his Signal Inspector's position would be protected.

19.    That Metro North knew its representations to Plaintiff regarding his being hired to work in a protected Signal Inspector supervisory position were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts regarding Plaintiff's ability to remain employed as a Signal Inspector; and were made with the intention of deceiving and defrauding Plaintiff in order to induce Plaintiff to leave his employment with Norfolk and accept employment with Defendant.

20.    That Plaintiff did not know the representations made by Metro North were false and only discovered the truth after he left his employment with Norfolk and commenced employment with Metro North.

21.    That had Plaintiff known that the representations made by Metro North regarding his employment with Defendant were false, he would not have left his employment with Norfolk.

22.    That by reasons of the foregoing, Plaintiff was demoted by Metro North, without cause, from Signal Inspector to Electronic Technician, with a resultant loss of job authority, reduction in his rate of pay and available overtime.

23.    That as a result of the aforestated conduct on the part of Metro North, Plaintiff has sustained damages estimated to be in the sum of ONE MILLION ($1,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION

24.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "23" of this Complaint with the same force and effect as if fully set forth at length herein.

25.    That by reason of the aforesaid conduct, Metro North breached its

contract with Plaintiff, without just cause.

26.    That Plaintiff has been at all times ready, willing and able to perform the duties of Signal Inspector, but that Metro North has wrongfully and illegally prevented Plaintiff from so performing the same.

27.    That as a result of the aforestated conduct on the part of Metro North, Plaintiff has sustained damages estimated to be in the sum of ONE MILLION ($1,000,000.00) DOLLARS.

<u>AS AND FOR A THIRD CAUSE OF ACTION</u>

28.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "27" of this Complaint with the same force and effect as if fully set forth at length herein.

29.    That to induce Plaintiff to leave his employment with Norfolk and accept employment with Metro North, Defendant negligently and recklessly represented to Plaintiff that he was being hired to work for Metro North in a protected Signal Inspector supervisory position before Defendant had reached an agreement with ACRE Local 166 regarding the new positions in Metro North's C & S Department in the Port Jervis Territory.

30.    That Defendant negligently and recklessly induced Plaintiff to leave his employment with Norfolk because Defendant needed employees with knowledge of the C & S system on the Port Jervis Territory when Metro North assumed responsibility for maintenance of the Port Jervis line.

31.    That solely by reason of the Defendant's negligent and reckless conduct, as aforedescribed, Plaintiff has sustained damages estimated to be in the sum of ONE MILLION ($1,000,000.00) DOLLARS.

WHEREFORE, Plaintiff demands judgment on the first cause of action in the sum of ONE MILLION ($1,000,000.00) DOLLARS; Plaintiff demands judgment on the second

cause of action in the sum of ONE MILLION ($1,000,000.00) DOLLARS; and Plaintiff demands judgment on the third cause of action in the sum of ONE MILLION ($1,000,000.00) DOLLARS; together with pre and post judgment interest, costs and disbursements, and for such other and further relief as the Court deems just and proper.

Dated: May 6, 2004
     Walden, New York

Yours, etc.,

MARK T. STARKMAN, ESQ.
Jacobowitz & Gubits, LLP
Attorneys for Plaintiff
158 Orange Avenue
P.O. Box 367
Walden, New York 12586
(845) 778-2121


TO:    MTA METRO NORTH
       COMMUTER RAILROAD
       347 Madison Avenue
       New York, New York 10017

**VERIFICATION**

STATE OF NEW YORK       )
                                 :ss.:

COUNTY OF ORANGE      )

    ROBERT BARBANTI, being sworn says:

    I am the Plaintiff in the action herein.

    I have read the annexed Complaint dated May 6, 2004, know the contents thereof and the same are true to my knowledge, except those matters therein which are to be alleged on information and belief, and as to those matters I believe them to be true.

                                              ROBERT BARBANTI

Sworn to before me this
7th day of May , 2004.

Notary Public - State of New York

ROSE MARIE CHIVATTONI
Notary Public, State of New York
No. 4858922
Qualified in Orange County
Commission Expires September 22, 2006

W:\6393\1\RMC4222.WPD

# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE
----------------------------------------------------------------X
ROBERT BARBANTI,

                      Plaintiff,                  Index No. 2004/3172

          -against-                   <u>VERIFIED ANSWER</u>

METRO-NORTH COMMUTER RAILROAD,

                      Defendant.
----------------------------------------------------------------X

       Defendant Metro-North Commuter Railroad, by its Vice President and General Counsel, Richard K. Bernard, alleges for its Answer to the Verified Complaint as follows:

       1.     States that no responsive pleading is required to the allegations in ¶ 1 of the Verified Complaint.

       2.     Upon information and belief, admits the allegations in ¶ 2 of the Verified Complaint.

       3.     Admits the allegations in ¶ 3 of the Verified Complaint.

       4.     Admits the allegations in ¶ 4 of the Verified Complaint.

       5.     Admits the allegations in ¶ 5 of the Verified Complaint.

       6.     Denies each and every allegation in ¶ 6 of the Verified Complaint, except admits it agreed with Norfolk Southern that Norfolk Southern employees working on the Port Jervis Line would be given preference for newly-created positions with Metro-North on that Line.

       7.     Denies each and every allegation in ¶ 7 of the Verified Complaint, except admits that on or about April 1, 2003, plaintiff was offered a position as Inspector under the applicable collective bargaining agreement and was to be paid an hourly wage in accordance with that agreement.

       8.     Denies each and every allegation in ¶ 8 of the Verified Complaint.

       9.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 9 of the Verified Complaint.

ORIGINAL FILED
ORANGE COUNTY CLERK
FILED

Jun 15 10 06 AM '04

10.     Denies each and every allegation in ¶ 10 of the Verified Complaint.

11.     Denies each and every allegation in ¶ 11 of the Verified Complaint, except admits it entered into a collective bargaining agreement with ACRE Local 166 on or about April 15, 2003 covering the former Norfolk Southern employees working in Metro-North's Communications and Signal Department.

12.     Denies each and every allegation in ¶ 12 of the Verified Complaint, except admits Metro-North and ACRE Local 166 agreed plaintiff would be placed in an Electronic Technician position.

13.     Denies each and every allegation in ¶ 13 of the Verified Complaint.

14.     Admits the allegations in ¶ 14 of the Verified Complaint.

15.     Repeats and re-alleges the allegations in ¶¶ 1-14 of this Verified Answer as if fully set forth herein.

16.     Denies each and every allegation in ¶ 16 of the Verified Complaint, except admits it entered into a collective bargaining agreement with ACRE Local 166.

17.     Denies each and every allegation in ¶ 17 of the Verified Complaint, except admits it assumed responsibility for the maintenance of the Port Jervis Line)

18.     Denies each and every allegation in ¶ 18 of the Verified Complaint.

19.     Denies each and every allegation in ¶ 19 of the Verified Complaint.

20.     Denies each and every allegation in ¶ 20 of the Verified Complaint.

21.     Denies each and every allegation in ¶ 21 of the Verified Complaint.

22.     Denies each and every allegation in ¶ 22 of the Verified Complaint.

23.     Denies each and every allegation in ¶ 23 of the Verified Complaint.

24.     Repeats and re-alleges the allegations in ¶¶ 1-23 of this Verified Answer as if fully set forth herein.

25.     Denies each and every allegation in ¶ 25 of the Verified Complaint.

26.     Denies each and every allegation in ¶ 26 of the Verified Complaint.

27.     Denies each and every allegation in ¶ 27 of the Verified Complaint.

28. Repeats and re-alleges the allegations in ¶¶ 1-27 of this Verified Answer as if fully set forth herein.

29. Denies each and every allegation in ¶ 29 of the Verified Complaint.

30. Denies each and every allegation in ¶ 30 of the Verified Complaint.

31. Denies each and every allegation in ¶ 31 of the Verified Complaint.

### First Affirmative Defense

32. The Verified Complaint fails to state a cause of action.

### Second Affirmative Defense

32. Plaintiff has failed to exhaust his administrative remedies.

### Third Affirmative Defense

33. The Railway Labor Act, 45 U.S.C. § 151, et seq., preempts plaintiff's claims.

### Fourth Affirmative Defense

34. Plaintiff's claims are barred by the statute of frauds.

WHEREFORE, defendant demands dismissal of the complaint, together with its costs and attorney's fees and such other and further relief as the Court in its discretion considers equitable and just.

Dated: New York, New York
June 11, 2004

Respectfully submitted,

Richard K. Bernard,
Vice President and General Counsel
Metro-North Commuter Railroad

By: _____
Sofia C. Hubscher

# VERIFICATION

STATE OF NEW YORK )
                      ) ss:
COUNTY OF NEW YORK )

Ray Burney, being duly sworn, deposes and says:

I am an Director, Labor Relations, of defendant Metro-North Commuter Railroad Company, a public benefit corporation existing under the laws of the State of New York, and a subsidiary of plaintiff Metropolitan Transportation Authority, which is also a public benefit corporation existing under the laws of the State of New York. I make this verification pursuant to CPLR 3020 (d).

I have read the foregoing Verified Answer to the Complaint and I am acquainted with the allegations therein based upon my personal knowledge and the records of the Company, and the allegations are true, except as to those which are alleged upon information and belief, and as to those allegations I believe them to be true.

_____
Ray Burney

Sworn to before me this _11_th
day of June, 2004

LAURA MATTHEWS
Notary Public, State of New York
No. 4691148
Qualified in Bronx County
Commission Expires April 27, 2007

# Exhibit C

OPERATIONS AGREEMENT


By and Between


## METRO NORTH COMMUTER RAILROAD COMPANY


and


## NORFOLK SOUTHERN RAILWAY COMPANY

## and PENNSYLVANIA LINES LLC


With Respect to Line of Railroad Between Suffern, NY and Port Jervis, NY


EFFECTIVE February 28, 2003

# TABLE OF CONTENTS

ARTICLE 1. PURPOSE; DEFINITIONS. ...........................................................5

    (a) PURPOSE. ......................................................................................5

    (b) DEFINITIONS. ...............................................................................5

ARTICLE 2. OPERATING RIGHTS. ...................................................................6

    (a) METRO-NORTH CONTROL OF LINE ON
        COMMENCEMENT DATE. .......................................................6

    (b) NSR OPERATION OF SUFFERN INDUSTRIAL
        TRACK. ....................................................................................6

    (c) NO METRO-NORTH RAIL FREIGHT SERVICE USE;
        NO METRO-NORTH RIGHT TO GRANT FREIGHT
        SERVICE RIGHTS; NO METRO-NORTH RIGHT TO
        ADMIT OTHER PASSENGER SERVICE
        OPERATORS, EXCEPT METRO-NORTH
        AFFILIATES OR CONTRACTORS, WITHOUT NSR
        CONSENT; NO STORAGE OF CARS ON MAIN-LINE
        TRACKS. ...................................................................................6

    (d) NO NSR RAIL PASSENGER SERVICE EXCEPT
        SPECIAL OR EXCURSION TRAINS; NO NSR
        RIGHT TO TRANSFER PASSENGER SERVICE
        RIGHTS OR TO ADMIT OTHER PASSENGER
        SERVICE OPERATORS; NO STORAGE OF CARS
        ON MAIN-LINE TRACKS. ...........................................................8

    (e) ALLOCATION OF EXPENSES AND LIABILITIES. .........................9

ARTICLE 3. COMPENSATION FOR NSR USE; MAINTENANCE
            CHARGES. ..................................................................................13

    (a) COMPENSATION TO METRO-NORTH FOR NSR
        USE OF LINE. ...........................................................................13

    (b) MAINTENANCE CHARGES. ........................................................18

    (c) CHARGES FOR ACTUAL COSTS OF WRECKING
        OR OTHER SPECIAL OR EXTRAORDINARY
        SERVICES. ................................................................................19

Execution Copy 2/28/03

    (d)    DISPUTED PAYMENT AMOUNTS. ................................ 19

    (e)    COLLECTION OPTIONS. ........................................... 20

ARTICLE 4.  [RESERVED] ........................................................ 21

ARTICLE 5.  OPERATIONS, INSPECTIONS, DISPATCHING, AND
            MAINTENANCE. ..................................................... 21

    (a)    PROTECTION OF LINE BY METRO-NORTH AFTER
          COMMENCEMENT DATE. ........................................ 21

    (b)    INSPECTIONS. ....................................................... 21

    (c)    METRO-NORTH CONTROL; OPERATIONS;
          ACCESS; EMERGENCY AND SPECIAL TRAIN
          MOVEMENTS; USE OF CONTRACTORS. .................. 22

    (d)    OPERATION AND MAINTENANCE IN
          COMPLIANCE WITH LAW. ........................................ 25

    (e)    EMERGENCY ASSISTANCE FOR EQUIPMENT
          AND WRECKING SERVICES. .................................... 25

    (f)    OPERATING RULES; METRO-NORTH
          MODIFICATION OF RULES. ...................................... 27

    (g)    EMPLOYEE DISCIPLINE; LABOR HEARINGS. ........... 27

    (h)    CLEARANCES. ....................................................... 28

    (i)    GRADE CROSSINGS. .............................................. 30

    (j)    LINE MAINTENANCE; CAPITAL IMPROVEMENTS. .... 32

    (k)    CASUALTY LOSSES. .............................................. 39

ARTICLE 6.  ENVIRONMENTAL CONDITIONS AND
            OBLIGATIONS. ...................................................... 40

    (a)    DEFINITIONS. ........................................................ 40

    (b)    GOVERNMENTAL APPROVALS AND
          COMPLIANCE WITH ENVIRONMENTAL LAWS ......... 43

    (c)    METRO-NORTH ENVIRONMENTAL DUTIES AND
          COVENANTS. ........................................................ 45

Execution Copy 2/28/03

(d) NSR ENVIRONMENTAL DUTIES AND COVENANTS. .................................................47

(e) PRR ENVIRONMENTAL DUTIES AND COVENANTS. .................................................49

(f) STORAGE TANKS AND PIPING ON LINE. ....................................51

(g) RIGHT TO PERFORM ENVIRONMENTAL INSPECTIONS AND RESPONSE ACTIONS. ................................52

(h) RESPONSIBILITY FOR CONTAMINATION AND CLAIMS; INDEMNIFICATION PROVISIONS. ....................................53

(i) RESOLUTION OF DISPUTES OVER ENVIRONMENTAL OBLIGATIONS. .............................................62

ARTICLE 7. OPERATIONS AND MAINTENANCE LIABILITY, INDEMNITY, INSURANCE, EMPLOYEE PROTECTION. .................................................64

(a) DEFINITIONS. ................................................................64

(b) OTHER INDEMNITY PROVISIONS. .............................................65

(c) ALLOCATION OF LIABILITY AND INDEMNITY FOR PROPERTY DAMAGE, PERSONAL INJURY, AND DEATH ARISING FROM OPERATIONS AND MAINTENANCE. ................................................65

(d) CLAIMS AND LITIGATION. ......................................................66

(e) INSURANCE. .................................................................66

(f) EMPLOYEE PROTECTION. ....................................................67

ARTICLE 8. PRR CONSENT TO OPERATIONS AGREEMENT; STATUS OF PRR, POSSIBLE SUCCESSOR TO AGREEMENT. .................................................68

(a) ACKNOWLEDGMENT OF PRR OWNERSHIP OF LINE. .................................................68

(b) PRR CONSENT. .............................................................68

(c) PRR CONSENT REQUIRED FOR ASSIGNMENT OR TRANSFER. .................................................68

(d) PRR PARTY FOR LIMITED PURPOSES. ....................................69

Execution Copy 2/28/03

    (e)    NO NSR LIABILITY FOR OPERATIONS AGREEMENT AFTER TERMINATION OF NSR OPERATING AGREEMENT. ..................69

    (f)    PRR SHALL ASSUME AGREEMENT UNDER CERTAIN CIRCUMSTANCES. ..................69

ARTICLE 9.  ARBITRATION; LITIGATION. ..................69

    (a)    ARBITRATION. ..................69

    (b)    LITIGATION. ..................71

    (c)    WAIVER OF TRIAL BY JURY. ..................71

ARTICLE 10. TERM, TERMINATION AND EXPIRATION. ..................72

    (a)    TERM; RIGHT TO RENEW; VOLUNTARY TERMINATION. ..................72

    (b)    TERMINATION FOR BREACH. ..................73

    (c)    SURVIVAL OF ACCRUED PAYMENT OR INDEMNITY, INSURANCE, CONDITION OF LINE AND REGULATORY FILING OBLIGATIONS. ..................74

ARTICLE 11. [RESERVED] ..................75

ARTICLE 12. MISCELLANEOUS GENERAL PROVISIONS. ..................75

    (a)    NSR MAINTENANCE OF WAY EMPLOYEES; NOTICE; NEUTRALITY. ..................75

    (b)    FORCE MAJEURE. ..................75

    (c)    ASSIGNMENT. ..................75

    (d)    AGREEMENT FOR SOLE BENEFIT OF PARTIES. ..................76

    (e)    NO ADMISSIONS AGAINST INTEREST. ..................77

    (f)    RELATIONSHIP OF THE PARTIES. ..................77

    (g)    WAIVER. ..................77

    (h)    AMENDMENT; SUPERSESSION OF 1983 TRACKAGE RIGHTS AGREEMENT. ..................78

    (i)    EMINENT DOMAIN; CONDEMNATION. ..................78

Execution Copy 2/28/03

(j)    NOTICES. ..........................................................................80

(k)    CAPTIONS; HEADINGS. ..............................................80

(l)    INTERPRETATION. ........................................................80

(m)    GOVERNING LAW. .........................................................81

(n)    CONFIDENTIALITY. ........................................................81

(o)    SEVERABILITY. .............................................................82

(p)    NEWS RELEASES. ........................................................82

(q)    TIME IS OF THE ESSENCE. .........................................82

(r)    NON-DISCRIMINATION. ................................................82

(s)    COUNTERPARTS. .........................................................83

**ARTICLE 11.**      [RESERVED]

**ARTICLE 12.**      **MISCELLANEOUS GENERAL PROVISIONS.**

(a)   **NSR MAINTENANCE OF WAY EMPLOYEES; NOTICE; NEUTRALITY.**

(i) METRO-NORTH will provide NSR maintenance of way employees who have been working on the Line and who seek employment with METRO-NORTH priority consideration for employment for each new maintenance of way position created by METRO-NORTH within one (1) year after the Commencement Date (the terms of the employment, including but not limited to seniority, rates of pay, benefits, employees' responsibilities and candidates' qualifications shall be determined by METRO-NORTH in its sole discretion) and (ii) if an effort is undertaken by the Brotherhood of Maintenance of Way Employes to organize maintenance of way employees working on the Line, METRO-NORTH will assume a neutral stance in such organizing effort.

(b)   **FORCE MAJEURE.**

Whenever a period of time is provided in the Sublease and the Operations Agreement for either party to perform any act or thing, such party shall not be liable nor responsible for any delays due to derailments, wrecks, fire, explosion, strikes, lockouts, work stoppages, casualty occurrences, acts of God or nature, severe weather or climatic conditions, war, riots, public disorder, blockade, acts of terrorism, protest, vandalism or sabotage, criminal acts of third persons or entities, acts of civil or military authorities, FRA and other applicable governmental regulations, control or orders, nuclear accidents or incidents, embargo of freight operations or service orders issued through the AAR or STB, and other such causes beyond the reasonable control of such party; and in any such event, such time period shall be extended for the amount of time such party is so delayed; provided, that this provision shall not be construed to affect the responsibilities of such party hereunder not affected by the force majeure or to do or perform such delayed act or thing once such delays have been removed.

(c)   **ASSIGNMENT.**

(i)   **No Transfer to Third Party Without Consent.**

This Sublease and the Operations Agreement, or any rights, duties or obligations in either of them, shall not be assigned, or in any manner transferred, granted, conveyed or licensed nor shall the Line be sublet, used or occupied by any party other than METRO-NORTH or its Contractors (whether through purported lease, sublease, trackage rights agreement, access rights agreement, operating rights agreement, haulage agreement, license, permit, invitation, right of entry, franchise agreement, contract, agency arrangement, transfer, assignment, conveyance, easement or any other type of grant, contract, agreement or arrangement, howsoever designated), nor used by METRO-

75

# SUBLEASE METRO-NORTH

## Secretary's Registry No.

2698

### By and Between

# METRO NORTH COMMUTER RAILROAD COMPANY

### and

# NORFOLK SOUTHERN RAILWAY COMPANY

# and PENNSYLVANIA LINES LLC

With Respect to Line of Railroad Between Suffern, NY and Port Jervis, NY

EFFECTIVE February 28, 2003

# TABLE OF CONTENTS

ARTICLE 1.  SUBLEASE. ...................................................... 4

   (a)   SUBLEASE OF THE LINE TO METRO-NORTH. ........................... 4

   (b)   NSR RETAINS EXCLUSIVE, IRREVOCABLE
         RESERVED FREIGHT OPERATING RIGHTS. ............................. 10

ARTICLE 2.  INVENTORY OF LINE; INSPECTIONS;
            APPROVALS. ..................................................... 18

   (a)   INVENTORY OF LINE. .............................................. 18

   (b)   ENVIRONMENTAL INSPECTION PRIOR TO
         COMMENCEMENT DATE. ............................................. 19

   (c)   CORPORATE APPROVALS. ........................................... 19

ARTICLE 3.  SUBLEASE RENTAL; ADJUSTMENT; PAYMENT;
            INTEREST; AUDITS. .............................................. 21

   (a)   SUBLEASE RENTAL AND CHARGES UNDER 1983
         TRACKAGE RIGHTS AGREEMENT BEFORE
         COMMENCEMENT DATE. ............................................. 21

   (b)   SUBLEASE RENTAL AMOUNT ......................................... 21

   (c)   ANNUAL SUBLEASE RENTAL DUE DATE. ............................... 22

   (d)   LATE PAYMENT; INTEREST. ........................................ 22

   (e)   SUBLEASE RENTAL ADJUSTMENT INDEX. .............................. 22

   (f)   ADJUSTMENT OF RENTAL FOR FAILURE TO
         CONCLUDE PURCHASE/SALE PROCESS AFTER
         APPRAISAL. ..................................................... 23

   (g)   COLLECTION OPTIONS. ............................................ 25

ARTICLE 4.  TAXES AND UTILITIES. ........................................... 25

   (a)   METRO-NORTH RESPONSIBLE PARTY FOR
         PROPERTY TAX PURPOSES AS BETWEEN IT AND
         NSR OR PRR; NOTICES. ........................................... 25

(b) METRO-NORTH LIABILITY FOR UTILITY BILL PAYMENTS, EXCEPT WITH RESPECT TO DIRECT NSR USE OF UTILITIES. ........................................................... 28

(c) METRO-NORTH REIMBURSEMENT, INDEMNITY OF NSR FOR PAYMENT OF PROPERTY TAXES OR UTILITY BILLS AND REMOVAL OF TAX LIENS. ................... 29

(d) BILLING FOR NSR PAYMENTS OF TAXES, UTILITY BILLS OR LIEN REMOVAL COSTS THAT ARE METRO-NORTH RESPONSIBILITY. ........................................... 30

ARTICLES 5-7. [RESERVED] ........................................................... 30

ARTICLE 8. PRR CONSENT TO SUBLEASE; STATUS OF PRR, POSSIBLE SUCCESSOR TO AGREEMENTS. ........................... 30

(a) ACKNOWLEDGMENT OF PRR OWNERSHIP OF LINE. ................................................................................. 30

(b) PRR CONSENT. ......................................................... 30

(c) PRR CONSENT REQUIRED FOR ASSIGNMENT OR TRANSFER. ........................................................... 30

(d) PRR PARTY FOR LIMITED PURPOSES. ..................................... 30

(e) NO NSR LIABILITY FOR SUBLEASE AND OPERATIONS AGREEMENT AFTER TERMINATION OF NSR OPERATING AGREEMENT. ........................................ 31

(f) PRR SHALL ASSUME AGREEMENTS UNDER CERTAIN CIRCUMSTANCES. ........................................... 31

ARTICLE 9. ARBITRATION; LITIGATION. ........................................ 31

ARTICLE 10. TERM, TERMINATION AND EXPIRATION. .................................. 31

(a) TERM; RIGHT TO RENEW; VOLUNTARY TERMINATION. ........................................................... 31

(b) TERMINATION FOR BREACH. ...................................... 32

(c) METRO-NORTH DUTY TO FILE WITH STB OR REGULATORY AGENCY UPON EXPIRATION OR TERMINATION OF AGREEMENTS, IF THEN REQUIRED BY FEDERAL LAW; RIGHT OF FIRST

REFUSAL AND RIGHT TO MATCH PURCHASE OFFERS. .................................................... 33

(d)    SURRENDER OF THE LINE UPON EXPIRATION OR TERMINATION. ............................................. 35

(e)    HOLDOVER SUBLEASE RENTAL AND OPERATIONS AGREEMENT. ............................. 36

(f)    JOINT INSPECTION OF LINE AFTER EXPIRATION OR TERMINATION OF SUBLEASE. ......................... 37

(g)    SURVIVAL OF ACCRUED PAYMENT OR INDEMNITY, INSURANCE, CONDITION OF LINE AND REGULATORY FILING OBLIGATIONS. ............ 37

ARTICLE 11. PROCEDURE FOR DETERMINING FUTURE PURCHASE AND SALE PRICE FOR THE LINE. ......... 38

ARTICLE 12. MISCELLANEOUS GENERAL PROVISIONS. ........................... 43

(a)    NSR MAINTENANCE OF WAY EMPLOYEES; NOTICE; NEUTRALITY. ................................... 43

(b)    FORCE MAJEURE. ..................................... 43

(c)    ASSIGNMENT. ............................................ 43

(d)    AGREEMENT FOR SOLE BENEFIT OF PARTIES. ...... 44

(e)    NO ADMISSIONS AGAINST INTEREST. ................ 45

(f)    RELATIONSHIP OF THE PARTIES. ..................... 45

(g)    WAIVER. ................................................... 45

(h)    AMENDMENT; SUPERSESSION OF 1983 TRACKAGE RIGHTS AGREEMENT. ................... 46

(i)    EMINENT DOMAIN; CONDEMNATION. ................ 46

(j)    NOTICES. ................................................. 48

(k)    CAPTIONS; HEADINGS. ................................ 48

(l)    INTERPRETATION. ...................................... 48

(m)    GOVERNING LAW. ...................................... 49

Execution Copy 2/28/03

| (n) | CONFIDENTIALITY. | 49 |
|-----|------------------|----|
| (o) | SEVERABILITY. | 50 |
| (p) | NEWS RELEASES. | 50 |
| (q) | TIME IS OF THE ESSENCE. | 50 |
| (r) | NON-DISCRIMINATION. | 50 |
| (s) | COUNTERPARTS. | 51 |

Execution Copy 2/28/03

## ARTICLE 12.  MISCELLANEOUS GENERAL PROVISIONS.

### (a)  NSR MAINTENANCE OF WAY EMPLOYEES; NOTICE; NEUTRALITY.

(i) METRO-NORTH will provide NSR maintenance of way employees who have been working on the Line and who seek employment with METRO-NORTH priority consideration for employment for each new maintenance of way position created by METRO-NORTH within one (1) year after the Commencement Date (the terms of the employment, including but not limited to seniority, rates of pay, benefits, employees' responsibilities and candidates' qualifications shall be determined by METRO-NORTH in its sole discretion) and (ii) if an effort is undertaken by the Brotherhood of Maintenance of Way Employes to organize maintenance of way employees working on the Line, METRO-NORTH will assume a neutral stance in such organizing effort.

### (b)  FORCE MAJEURE.

Whenever a period of time is provided in this Sublease and the Operations Agreement for either party to perform any act or thing, such party shall not be liable nor responsible for any delays due to derailments, wrecks, fire, explosion, strikes, lockouts, work stoppages, casualty occurrences, acts of God or nature, severe weather or climatic conditions, war, riots, public disorder, blockade, acts of terrorism, protest, vandalism or sabotage, criminal acts of third persons or entities, acts of civil or military authorities, FRA and other applicable governmental regulations, control or orders, nuclear accidents or incidents, embargo of freight operations or service orders issued through the AAR or STB, and other such causes beyond the reasonable control of such party; and in any such event, such time period shall be extended for the amount of time such party is so delayed; provided, that this provision shall not be construed to affect the responsibilities of such party hereunder not affected by the force majeure or to do or perform such delayed act or thing once such delays have been removed.

### (c)  ASSIGNMENT.

#### (i)  No Transfer to Third Party Without Consent.

This Sublease and the Operations Agreement, or any rights, duties or obligations in either of them, shall not be assigned, or in any manner transferred, granted, conveyed or licensed nor shall the Line be sublet, used or occupied by any party other than METRO-NORTH or its Contractors (whether through purported lease, sublease, trackage rights agreement, access rights agreement, operating rights agreement, haulage agreement, license, permit, invitation, right of entry, franchise agreement, contract, agency arrangement, transfer, assignment, conveyance, easement or any other type of grant, contract, agreement or arrangement, howsoever designated), nor used by METRO-NORTH or its Contractors or parties claiming through them for freight railroad

Execution Copy 2/28/03

# Exhibit D

 **Metro-North Railroad**

April 15, 2003

Mr. Thomas Ryder
General Chairman - ACRE Local 166
420 Lexington Avenue, Suite 215
New York, NY 10017

Re:     **Port Jervis Line:  Right-of-Way Maintenance**

Dear Mr. Ryder:

MTA Metro-North has completed our negotiations with Norfolk Southern Railroad to enter into a long term lease of the Port Jervis Line.  As part of the lease, MTA Metro-North will assume full responsibility for the maintenance of the right-of-way on this territory.  This maintenance of way work includes the C& S Department functions currently performed by Metro-North employees represented by Association of Commuter Rail Employees, Local 166 on Metro-North's territories east of the Hudson River.  In our discussions with Norfolk Southern Railroad, we have agreed to give preference in hiring to the employees of Norfolk Southern Railroad who currently work in the Port Jervis Territory for the positions that Metro-North plans on establishing.

Metro-North is willing to voluntarily recognize the ACRE, Local 166 as the duly accredited representatives of the new employees and new positions that will be established on the Port Jervis Line over the next few months and give current Metro-North employees the right to bid on the remaining new positions.  This voluntary recognition of ACRE, Local 166 and Metro-North's agreement to apply the terms of the current Collective Bargaining Agreement extends to the positions in the craft or class that are currently represented by ACRE, Local 166 at Metro-North, not to any and all positions established by Metro-North on the Port Jervis Territory (for example, Metro-North would not voluntarily recognize the ACRE, Local 166 as the representative of the employees in the Trackman craft).

In exchange for Metro-North's voluntary recognition of ACRE, Local 166 as representatives of these employees and the adoption of the current Collective Bargaining Agreement, the following provisions will apply:

MTA Metro-North Railroad is an agency of the Metropolitan Transportation Authority, State of New York
Peter S. Kalikow, Chairman